UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Pierce Division

**DONALD RAYMOND GRAY III,**                    CASE NO.:

*Plaintiff,*

v.

**NATIONAL CONSUMER TELECOM &
UTILITIES EXCHANGE, INC.**

*Defendant,*
_____/

**PLAINTIFF'S COMPLAINT**
**JURY DEMAND**

1. Plaintiff, Donald Raymond Gray III (hereinafter "Plaintiff" or "Mr. Gray"), brings this action against Defendant, National Consumer Telecom & Utilities Exchange, Inc. ("NCTUE") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3. Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Broward County, Florida.

**PARTIES**

4. Plaintiff is a natural person who, at all times relevant to this action is and was a resident of St. Lucie County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5. Defendant NCTUE is a New Jersey corporation incorporated under the laws of the State of New Jersey.  NCTUE regularly conducts business in State of Florida and is engaged in

the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

6. Specifically, NCTUE provides consumer reports that contain information about consumers' payment histories and/or delinquent account statuses with their current or prior telecommunications and utilities providers that is not available on traditional consumer report such as those prepared by Trans Union, LLC, Experian Information Solutions, Inc. and Equifax Information Services LLC.

7. NCTUE's consumer reports are used by the telecommunication and utility industries for the purposes of evaluating consumers' eligibility for new accounts.

## STATUTORY FRAMEWORK OF THE FAIR CREDIT REPORTING ACT

8. The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.*, was enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

9. Congress found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3),(4).

10. The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

11. The FCRA requirements are important, because they help CRAs ensure that the information in their consumer reports is accurate, they assure that consumers know all the information that is in their files and who has received or requested their reports, and they protect consumer privacy.

12. The FCRA provides a private right of action against any person that violates the provisions of the FCRA. 15 U.S.C. §§ 1681o, 1681n.

13. If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a).

14. If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

15. A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees. 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

## FACTUAL ALLEGATIONS

16. In or around July 2023, Mr. Gray discovered that he was a victim of identity theft and that the identity thief subsequently opened fraudulently accounts with AT&T Mobility and Verizon Wireless without his knowledge.

17. In an attempt to remedy and prevent further instances of identity theft against him, Mr. Gray contacted the Martin County Sheriff's Office to report the identity theft and requested his consumer reports from various consumer reporting agencies including NCTUE.

18. On or about April 2, 2024, Mr. Gray mailed a letter to NCTUE requesting a copy of his consumer report.

19. On or about April 10, 2024, the United States Postal Service ("USPS") delivered Mr. Gray's request for his consumer report to NCTUE.

20. NCTUE, however, did not provide Mr. Gray with his consumer report or otherwise respond to his request.

21. On or about January 2, 2025, Mr. Gray mailed a second letter to NCTUE requesting a copy of his consumer report.

22. In his second letter, Mr. Gray explained that he is a victim of identity theft and was seeking a copy of his NCTUE consumer report to review it for any fraudulent information.

23. On or about January 8, 2025, USPS delivered Mr. Gray's second request for his consumer report to NCTUE.

24. In response to Mr. Gray's second request, NCTUE mailed Mr. Gray his consumer report dated January 8, 2025.

25. While the January 8, 2025 NCTUE consumer report did not contain any fraudulent information which initially prompted Mr. Gray to request his consumer report, it contained account information belonging to Mr. Gray's father, Donald Raymond Gray, Jr.

26. Specifically, the NCTUE consumer report included one Verizon Wireless account and two Comcast of Florida accounts that Mr. Gray believes belong to his father.

27. As a result of NCTUE's flawed procedures, NCTUE mixed Mr. Gray's consumer file with that of his father.

28. As a result of NCTUE's conduct, Plaintiff suffered actual damages in the form of harm to credit reputation and credit score, and emotional distress.

29. Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. *See Pedro v. Equifax, Inc.,* 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *See Diedrich v. Ocwen Loan Servicing, LLC,* 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their

credit and been forced to pay Ocwen greater payments and a higher interest rate"); *See Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); *See Binns v. Ocwen Loan Servicing, LLC*, No. 14- 01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to plaintiffs' credit scores and reputations were considered intangible harms"); *See Rothman v. U.S. Bank Nat'l Ass'n*, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); *See Green v. RentGrow, Inc.*, No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); *See Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, *See Coulbertson v. Experian Info. Sols., Inc.*, No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

## COUNT I - VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST NCTUE

30. Plaintiff incorporates by reference paragraphs 1 – 29 as if fully stated herein.

31. At all times relevant hereto, NCTUE is and was a "consumer reporting agency" as provided for under the FCRA.

32. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

33. NCTUE violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

34. Specifically, NCTUE mixed Plaintiff's credit file with that of his father.

35. NCTUE's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

36. In the alternative, NCTUE negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

37. As a result of NCTUE's FCRA violations, Plaintiff suffered mental and emotional distress associated with his father's information in his credit file and damage to his reputation and credit score.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against NCTUE in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## **JURY DEMAND**

38. Plaintiff demands a trial by jury on all issues so triable.

Dated: April 24, 2025

*Respectfully submitted*,

**SHARMIN & SHARMIN, P.A.**

*/s/ Eiman Sharmin*
Eiman Sharmin, Esq.
eiman@sharminlaw.com
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022
*Attorneys for Plaintiff*